IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| STEPHANIE MCINTOSH-LUIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.   09-22 |
| ) | |
| GOVERNOR JOHN P. DEJONGH, JR., ) | |
| in his official and individual capacity, and ) | |
| GOVERNMENT OF THE U.S. VIRGIN ) | |
| ISLANDS DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendants. ) | |

AMBROSE, U.S. Senior District Judge

## OPINION and ORDER OF COURT

Pending before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Docket No. 48). Plaintiff opposes Defendants' Motion. (Docket No. 59). After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, the Motion for Summary Judgment is granted in its entirety.

### I. BACKGROUND

#### A. Factual Background

Unless otherwise indicated, the following facts are undisputed.

In the Summer of 2001, Plaintiff, Stephanie McIntosh-Luis ("McIntosh-Luis" or "Plaintiff"), applied and was selected for the position of Assistant Director of Operations ("ADO") at the United States Virgin Islands Department of Justice under then-governor Charles Turnbull. Plaintiff began her employment with the DOJ on October 19, 2001, with an initial salary of $41,500. The Notification of Personnel Action ("NOPA") that describes the employment relationship between the Government and Plaintiff indicates that the position was an "exempt" position. ECF No. 60,

1

Ex. 21. Plaintiff signed a Memorandum dated July 10, 2001, electing to be placed in the exempt service. ECF No. 50-1 (Hermon Affidavit, Ex. 3). Plaintiff admits signing the Memorandum but testified that she was required to sign it. ECF No. 57 (Pl. Dep. at 13-14).

In a letter dated April 24, 2007, Governor Turnbull's successor, Defendant John P. DeJongh, Jr., notified Plaintiff that her employment with the Government was terminated effective May 11, 2007. ECF No. 50-1 (Hermon Aff., Ex. 4). The letter did not give a reason for the termination. See id. On May 25, 2007, Plaintiff filed an appeal of her termination with the Government of the Virgin Islands Public Employees Relations Board ("PERB") pursuant to 3 V.I. Code § 531. ECF No. 50-2 (PERB Decision and Order dated August 27, 2008). On or about August 27, 2008, the administrative judges at PERB held that there was no evidence of political discrimination on the part of the government. See id. The PERB also held that Plaintiff "should not have been labeled as an exempt employee, based on her job duties." Id. Plaintiff argues, *inter alia*, that she was fired because of her political affiliation with the opposing candidate for governor in violation of the First and Fourteenth Amendments to the United States Constitution and in breach of contract.

### B.  Procedural History

On May 6, 2009, Plaintiff filed her Complaint in this action against Defendants Government of the Virgin Islands Department of Justice and Governor John P. DeJongh, Jr. (Docket No. 1). Defendants filed an Answer to the Complaint on July 23, 2009. (Docket No. 7). On June 3, 2011, Defendants filed their Motion for Summary Judgment and supporting materials. (Docket Nos. 48-50). Plaintiff filed a Brief in Opposition and Response to Defendants' Statement of Undisputed Material Facts on July 29, 2011. (Docket Nos. 59-60). Plaintiff filed a Reply Brief on September 21, 2011. (Docket No. 64). The motion is now ripe for my review.

## II. LEGAL ANALYSIS

### A.  Standard of Review

2

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

With this standard in mind, I turn now to the issues of this case.

### B. Defendants' Motion for Summary Judgment

#### 1. Withdrawn Claims

In her Response Brief, Plaintiff indicates she is withdrawing her claim for Intentional Infliction of Emotional Distress (Count III) and her claim for punitive damages against Governor DeJongh in his individual capacity. ECF No. 59 at 15, 19. Plaintiff also admits that Defendants correctly argue that one of the statues under which she pleads, 3 V.I.C. § 498, was repealed in 2000, prior to the events on which she bases her cause of action. Id. at 19. Because Plaintiff does not contest Defendants' arguments regarding these claims, the motion for summary judgment as to these claims is granted.

#### 2. Federal Constitutional Claims

##### a. First Amendment

Plaintiff argues that Defendants terminated her employment because she openly supported and/or campaigned for DeJongh's opponent in the gubernatorial race, Kenneth Mapp. She claims that by firing her for these activities, Defendants violated her First Amendment right to free association. Plaintiff focuses primarily in her Response Brief on the argument that only government employees in "policy-making" positions may be terminated for politically-motivated reasons. She then sets forth the record evidence to demonstrate that her position (Assistant Director of Operations) was not policy-making in nature. ECF No. 59, at 9-10. Defendants, however, do not belabor the policy-making issue. Rather, Defendants contend that Plaintiff simply was not fired for her political activities. Defendants' argument in this regard is two-fold. First, Defendants contend that I should accept as res judicata the PERB's decision that Plaintiff was not the victim of political discrimination. Second, Defendants contend that, even if res judicata does not apply, the record is devoid of evidence to support Plaintiff's claim. After careful review, I agree with Defendants that the record does not support Plaintiff's First Amendment claim in this case.

As an initial matter, Defendants are correct that the PERB ruled that Plaintiff's termination did not result from political discrimination prohibited by 3 V.I.C. § 531, finding that there was no evidence to link Plaintiff's political beliefs or opinions to her termination. ECF No. 50-2, PERB Opinion at 8. To bind parties to a subsequent action to the outcome of a prior judgment pursuant to the principle of *res judicata,* courts require that (1) the prior judgment was valid, final, and on the merits; (2) the parties in the subsequent action are identical to or in privity with the parties in the prior action; and (3) the claims in the subsequent action arise out of the same transaction or occurrence as the prior claims. Smith v. Turnbull, S. Ct. Civ. No. 2007–0104, 2010 WL 4962890, at *3 (V.I. 2010) (citing CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d Cir.1999)). Here, Plaintiff does not contest that the PERB decision is valid, final, and on the merits. In addition, the parties in the PERB action included both Plaintiff and one of the Defendants in this action, the Government of the Virgin Islands Department of Justice. Further, although Plaintiff's claim in this case arises under the First Amendment, and her claim before the PERB arose under a Virgin Islands anti-discrimination statute, both claims turn on whether Defendants terminated Plaintiff because of her political opinions or activities. Plaintiff had the opportunity to litigate these issues and cross-examine witnesses in a full hearing before the PERB. These facts lend some support to Defendants' argument that *res judicata* bars Plaintiff's First Amendment claim in this case, at least with respect to the DOJ.[1]

Even if I am not bound by the PERB's decision, however, I agree that the record simply does not support Plaintiff's First Amendment claim in this case. To succeed on a discrimination claim based on political affiliation, a public employee must make a prima facie showing that "(1)

---

[1] Defendant DeJongh was not a party to the PERB action. Although Governor DeJongh is likely in privity with the DOJ in his official capacity, there is authority that he is not in privity in his individual capacity. See, e.g., Smith, 2010 WL 4962890, at *3 ("An official-capacity suit is really just another way of suing the government. Therefore, a [government] official sued in his official capacity is generally in privity with the [government]. A government official sued in his personal capacity . . . presents a different case. . . . [C]ourts do not generally consider an official sued in his personal capacity as being in privity with the government.").

that the employee works for a public employer in a position that does not require a political affiliation, (2) that the employee maintained a political affiliation, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision." Smith v. City of Allentown, 589 F.3d 684, 692 (3d. Cir. 2009) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 243 (3d Cir.2006)).  Once the plaintiff establishes a prima facie case, the defendant may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." Id. at 692-93.

Here, the evidence, even when viewed in the light most favorable to Plaintiff, simply does not support an inference that her political affiliation was a substantial or motivating factor in her termination.  Indeed, Plaintiff's "evidence" in this regard amounts to little more than speculation or her own subjective belief.  When asked about this issue at her deposition, Plaintiff testified as follows:

> Q. Right.  So you were just basically assuming that the reason for your dismissal was because of political, right?
>
> A. No, I ain't assume that.  It happened around the political time, political year. There was nothing in my record to show – show what occurred to me, and that's just how they were doing it.  They were just giving a pink slip and people were going home, so I had to – no, no, it was nothing.
>
> Q. But – but you cannot identify anyone other than your, if you will, subjective conclusion, right?  I mean – I mean, there was nothing that anyone of a supervisory nature said to you that you're fired because of your quote, unquote, "politics"?
>
> A. They didn't have to say, I know.  I know in my heart that's what it was, and I still feel that.

Pl.'s Dep. (ECF No. 57), at 34; see also id. at 32.  It is well-established that such subjective "feelings" and speculation are insufficient to support a first amendment political affiliation discrimination claim.  See, e.g., Smith, 589 F.3d at 684 (affirming grant of summary judgment

where Plaintiff's evidence based on speculation and subjective belief); McKeever v. Twp. of Washington, Civ. No. 09-1175, 2011 WL 53178, at * (D.N.J. Jan. 7, 2011) ("In the Third Circuit, mere speculation and conjecture cannot form the basis of an actionable claim of political discrimination.") (citing Contini v. Cranmer, 117 Fed. App'x 186, 190 (3d Cir.2004)), aff'd, 2012 WL 1023056 (3d Cir. Mar. 28, 2012).

Other than her speculation and subjective beliefs, Plaintiff does not point to any evidence that Defendants even *knew* about her political activities. See Laskaris v. Thornburgh, 733 F.2d 260, 266 (3d Cir. 1984) (plaintiff alleging wrongful discharge for political reasons cannot sustain her burden of proof without evidence that the employer knew of her political affiliation); McKeever v. Twp. of Washington, No. 11-1093, 2012 WL 1023056, at *1 (3d Cir. Mar. 28, 2012) ("The third prong requires proof that the employer knew of the plaintiff's political affiliation and that the affiliation caused the adverse action."). Indeed, the only other "evidence" to which Plaintiff points is the deposition testimony of a former co-worker, Leonardo Carrion. Carrion's testimony, however, merely establishes that he personally was aware that Plaintiff publicly supported Mapp. ECF No. 56-1 (Carrion Dep.) at 16; see also id. at 20 (elaborating that he saw Plaintiff wearing Mapp shirts "not on the job but out in the street" and that she told him in conversations at work that she supported Mapp's candidacy). Carrion did not indicate, or even speculate, in his deposition that Governor DeJongh or Attorney General Vincent Frazer (who recommended Plaintiff's termination) knew about Plaintiff's political affiliation. In his own deposition testimony, Frazer testified that he did not know that Plaintiff had supported Mapp for governor. ECF No. 58 (Frazer Dep.) at 11.

The mere fact that Plaintiff's termination occurred four months after Governor DeJongh took office is likewise insufficient to sustain Plaintiff's First Amendment claim. In addition to the lack of evidence of knowledge discussed above, a four-month time gap, without more, simply is not unduly suggestive of retaliatory motive to create an issue of material fact as to causation

under the facts of this case.  Cf. Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004) (two-month gap, without more, was not sufficient evidence of causation to survive summary judgment).[2]

Because the record is devoid of any evidence that Plaintiff's termination was politically motivated, Defendants' motion for summary judgment on this claim is granted.

### b.  Fourteenth Amendment – Due Process

Plaintiff argues that her termination deprived her of a property interest in public employment without due process of law in violation of the Fourteenth Amendment.  Defendants contend that Plaintiff's due process claim fails as a matter of law because Plaintiff did not have a property right in her employment under Virgin Islands law.  After careful review, I agree with Defendants.

To establish a procedural due process claim, a plaintiff must demonstrate that "(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to [her] did not provide due process of law."  Iles v. DeJongh, 638 F.3d 169, 173 (3d Cir. 2011).  "[W]hether an employee has a property right in continued employment is a question of state [or territorial] law."  Id. (quoting McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995)).  Thus, the law of the Virgin Islands governs whether Plaintiff has a property right in this case.

In a recent case decided on substantially similar facts, Iles v. DeJongh, the Court of Appeals for the Third Circuit outlined the relevant Virgin Islands law governing public employment in effect at and around the time of Plaintiff's termination.  See id. at 173-74.  The employee classifications contained in the relevant statutory provisions "are important because they determine which employees are entitled to due process protection before termination."  Id. at

---

[2]  In her Complaint, Plaintiff also avers that she was terminated "to facilitate the employment of persons who supported the campaign of Governor . . . DeJongh."  Complaint ¶ 11.  The record reveals, however, that Plaintiff's position remained vacant for over two years after her termination.  See Pl.'s Dep. (ECF No. 57), at 35-36; Frazer Dep. (ECF No. 58) at 23.

173.  As the Court of Appeals explained, under Virgin Islands law, public employees are divided into (1) "career service" and (2) "exempt service" employees.  Id.  As set forth in 3 V.I.C. § 451a, an employee is in the career service unless the employee holds an exempt position as described in 3 V.I.C. § 451a(b)(1)-(8).  Relevant to the instant motion, "a position is exempt and not in the career service category when the Governor designates it as a position of a 'policy-determining nature' and it is submitted to the Legislature.  The exempt designation is important because employees in that category can be terminated without cause.  Employees who are not 'exempt' are then considered 'career service employees.'"  Id. (citing 3 V.I.C. § 451a(b)(8)).

The "career services" category itself is divided into two subcategories:  employees who are "regular" and those who are "not regular."  Thus, "the categories of career service employees and regular employees are *not* interchangeable."  Id. (emphasis added).  As defined by the statute, a "regular employee" is an employee "who has been appointed to a position in the [career] service in accordance with this chapter [relating to the Personnel Merit System] after completing his working test period."  Id. at 174 (citing Richardson v. Felix, 856 F.2d 505, 509 (3d Cir. 1988) and 3 V.I.C. § 451).  Thus, "a 'career service' employee is also a 'regular' employee *only* if he has been appointed to his position in accordance with the Personnel Merit System *and* has completed his probationary period."  Id. (emphasis added).  Under the employee termination procedures set forth in 3 V.I.C. § 530, "employees who are 'regular employees' may be terminated only for cause, thus granting them a property interest in continued employment."  Iles, 638 F.3d at 174.  "Accordingly, not all 'career service' employees have due process protection, but rather, only those who also meet the definition of 'regular' employees."  Id.

Here, even assuming, as Plaintiff argues, that she is a "non-exempt" employee, she only is entitled to due process protection if she also is a "regular" employee within the meaning of the above statutes.  See id. at 175-76.  Indeed, whether or not Plaintiff is a "regular" employee is the sole issue Defendants raise in support of their motion for summary judgment on this claim.  See

9

ECF No. 64, at 1 ("With regard to the Fourteenth Amendment claim, this Court has a narrow issue to decide, and that is whether the Plaintiff was a regular or non-regular employee."). After careful consideration of the record and the arguments of the parties, I agree with Defendants that Plaintiff has not pointed to record evidence sufficient to support a finding that she was a "regular" employee within the meaning of Virgin Islands law as interpreted by the Court of Appeals for the Third Circuit.

The facts of this case are substantially similar to those in <u>Iles</u> in which the Court of Appeals found that two employees whom Governor DeJongh fired shortly after taking office were "career service" employees but were not "regular" employees under the plain language of 3 V.I.C. § 451. Specifically, the <u>Iles</u> court upheld the district court's finding that neither plaintiff demonstrated that he was "appointed on the basis of merit and fitness . . . [as] ascertained by competitive examinations." 638 F.3d at 176. In this case, the record likewise does not support a finding that Plaintiff was appointed to her position in accordance with the Personnel Merit System. For example, there is no evidence that the DOJ provided any resumes to the Department of Personnel ("DOP") or that the DOP sent the DOJ or the Governor a "certified list of eligibles" as required by 3 V.I.C. § 526(a).³ There likewise is no evidence that Plaintiff's "merit and fitness" for the job was ascertained by competitive examinations or that Plaintiff was appointed on the basis of such "merit and fitness" as required by 3 V.I.C. § 521. <u>See also</u> ECF No. 64-1 (Supplemental Affidavit of Kenneth L. Hermon, Jr.).⁴

---

³ The documents to which plaintiff cites on page 11 of her Response Brief (ECF No. 59) do not change this conclusion. Plaintiff does not cite any evidence to contradict the Supplemental Affidavit of Personnel Director Kenneth L. Hermon, Jr., stating that these documents are part of the administrative process for *every* government employee and, thus, are not indicative of "regular" employee status. ECF No. 64-1 (Hermon Supp, Aff.) ¶ 7.

⁴ Defendants also argue that Plaintiff was not a "regular" employee because she was appointed by Governor Turnbull *before* completing her probationary period. ECF No. 64, at 3. To support this argument, Defendants point to the language of 3 V.I.C. § 451 that a regular employee is one who has been appointed to a position in the classified service . . . *after* completing his working test period." <u>Id.</u> (quoting Iles, 638 F.3d at 176 (emphasis added by Defendant)). To the extent Defendant argues that this statutory

For all of these reasons, I find that Plaintiff did not have a protected property interest in her position and, therefore, her Fourteenth Amendment due process claims must fail.[5]

### c. Fourteenth Amendment – Equal Protection

Plaintiff's Complaint avers that Defendants denied her rights guaranteed by the Equal Protection clause of the Fourteenth Amendment to the Constitution. Complaint ¶ 17. In her Response Brief, however, Plaintiff states that her Fourteenth Amendment claim is based on due process, not equal protection. ECF No. 59, at 14. Accordingly, Defendants' motion for summary judgment as to Plaintiff's equal protection claim is granted.

### d. Section 1983

Because Plaintiff's constitutional theories cannot survive Defendants' summary judgment motion for the reasons set forth above, I need not address Defendants' additional arguments attacking Plaintiff's claims under Section 1983. See Greene v. Virgin Islands Water & Power Auth., No. 1:06–cv–11, 2011 WL 3032466, at *6 (D.V.I. July 22, 2011) ("To succeed on a claim under Section 1983, a plaintiff must show that: (1) the defendants are "persons" within the meaning of the statute; (2) the defendants acted under color of law; and (3) *their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes*." (emphasis added)).[6]

---

language somehow requires that an appointment take place *after* the probationary period for "regular" employee status to apply, I disagree with that interpretation. A more consistent reading of the statute is that a classified employee may be appointed, but cannot be considered a "regular" employee until after his or her probationary period expires. See, e.g., 3 V.I.C. § 527 ("Every person appointed to a position in the classified service from a list shall serve a probational period or working test before being given a status as a regular employee. *The probational period shall begin <u>on the effective date of appointment</u> to the position, and shall continue for such time as shall be determined by the rules*." (emphasis added)). This does not change my conclusions above, however, as the Court of Appeals in Iles made clear, employees also must satisfy § 451's additional requirement that the employee have been appointed in accordance with the requirements of the Personnel Merit System." Iles, 638 F.3d at 176 n.3. This Plaintiff has not done.

[5] In Iles, the Court of Appeals noted that a 2010 amendment to 3 V.I.C. § 530 removes the requirement that a "regular" employee have been appointed in accordance with the requirements of Chapter 25 of the Virgin Islands Code, including the competitive merit provisions. Iles, 638 F.3d at 176. The court, however, held that this amendment does not apply retroactively to cases such as this one in which the events of the suit predate the amendment. See id.

[6] I note, however, that Plaintiff concedes, albeit reluctantly, that under existing precedent, the Government

### 3. Breach of Contract Claim

Although Plaintiff's breach of contract claim sounds in territorial law, it is inextricably tied to her federal constitutional claims. Specifically, Plaintiff's stated basis for the alleged breach of contract is Defendants' alleged termination of her employment for exercising her constitutional right to free association with a political candidate. See ECF No. 59 at 17 ("Material questions of fact preclude summary judgment in favor of defendants on the question of breach of contract, because a reasonable juror could conclude that the defendants had no basis to terminated [*sic*] Plaintiff other than her exercise of her constitutional rights to free association with a political candidate other than the Governor."). As set forth above, no reasonable juror could conclude from the record in this case that the termination of Plaintiff's employment was motivated by her political affiliation. Because Plaintiff's submissions do not articulate or support any other basis for breach of contract liability, her breach of contract claim must fail. Accordingly, Defendants' motion for summary judgment on this claim is granted.

### III. CONCLUSION

For all of these reasons, Defendants' motion for summary judgment is granted in its entirety. An appropriate Order follows.

---

of the Virgin Islands and its officials acting in their official capacities are not considered "persons" under Section 1983 in actions for money damages. See Ngiraingas v. Sanchez, 495 U.S. 182 (1990); Nibbs v. Roberts, 1995 WL 78295, at *4 (D.V.I. Feb. 8, 1995). It is likewise well-established that government entities and government employees sued in their official capacities are not subject to punitive damages under Section 1983. See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| STEPHANIE MCINTOSH-LUIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GOVERNOR JOHN P. DEJONGH, JR., )<br>in his official and individual capacity, and )<br>GOVERNMENT OF THE U.S. VIRGIN )<br>ISLANDS DEPARTMENT OF JUSTICE, )<br>)<br>Defendants. ) | Civil Action No.   09-22 |

AMBROSE, U.S. Senior District Judge

## ORDER OF COURT

AND NOW, this 30th day of March, 2012, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendants' Motion for Summary Judgment (Docket No. 48) is granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Judge